United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREEMAN D. GRIFFIN, | No. C 06-3261 MHP (pr) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| KATHY PROSPER, | |
| Respondent. | |

## INTRODUCTION

Freeman D. Griffin, a prisoner at the California Correctional Center in Susanville, filed this pro se action seeking a writ of habeas corpus under 28 U.S.C. § 2254. This matter is now before the court for consideration of the merits of the pro se habeas petition. For the reasons discussed below, the petition will be denied.

## BACKGROUND

Petitioner was convicted in Alameda County Superior Court of second degree robbery and was found to have suffered three prior prison terms. He was found not guilty of possession of a firearm by a felon and was found not to have used a firearm in the commission of the robbery. On November 13, 2003, he was sentenced to a total term of six years in prison: the mid-term of three years for robbery plus consecutive one-year terms for each of his three prior prison terms.

The crime was described in the California Court of Appeal's decision.

> On Monday, March 24, 2003, Arthur Lowery was robbed in front of his house. In a photo lineup, he identified defendant Freeman P. Griffin as the perpetrator. . . . [¶] At the preliminary hearing, Lowery testified as follows: He was in front of his house in Oakland around 9:20 on the evening of March 24, 2003, when defendant, whom he recognized from the neighborhood and knew as "Freeway," entered the gate, walked up to him and told him that he had "disrespected [defendant's] sister." Lowery said, "I don't know what you're talking about," and defendant pulled out what appeared to be a black semi-automatic revolver and put it to Lowery's head. Defendant took Lowery's wallet from his back pocket, then took a pack of cigarettes and a lighter from his front pocket. Lowery did not resist because he feared for his life. Defendant left the yard and drove away in a car that Lowery believed to be a 2000 or 2001 Dodge Stratus, or "that type of car." [¶] Lowery did not report the crime until March 27.

Cal. Ct. App. Opinion, pp. 1-2. At trial, several inconsistencies in Lowery's statements were shown, including his statements about the amount of alcohol he had consumed that night, his delay in telling anyone about the crime, the items taken from him, the clothes the robber wore, and the characteristics of the alleged weapon.

Petitioner appealed. His conviction was affirmed by the California Court of Appeal and his petition for review was denied by the California Supreme Court.

He then filed this action. In his petition for writ of habeas corpus in this court, petitioner urged that (1) the prosecutor improperly commented during closing argument about petitioner's failure to testify, thereby violating petitioner's Fifth Amendment privilege against self-incrimination, and (2) the evidence was insufficient to support the sentence enhancement under California Penal Code § 667.5, thereby violating petitioner's Fourteenth Amendment right to due process. The court issued an order to show cause why the writ should not be granted. Respondent filed an answer and petitioner filed a traverse. The matter is now ready for a determination on the merits of the petition.

**JURISDICTION AND VENUE**

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred in Alameda County, California, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

2

# EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court.  See 28 U.S.C. § 2254(b), (c).  The parties do not dispute that state court remedies were exhausted for the claims asserted in the petition.

# STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask

1 whether the state court's application of clearly established federal law was "objectively
2 unreasonable." Id. at 409.

## DISCUSSION

A. The Petition

    1.    The *Griffin* Error Claim

Petitioner claims that the prosecutor committed error under Griffin v. California, 380 U.S. 609, 615 (1965), by improperly commenting on his failure to testify. The comment in question was made during rebuttal and was in response to a comment made by the defense counsel in her closing argument.

Defense counsel argued in her closing argument that the presumption of innocence meant that the jurors "start with the presumption that the government got it wrong" and that the victim "got it wrong." RT 749-50. Defense counsel also argued that the trial was not a balancing test and "that's why Mr. Griffin doesn't have any burden here. He doesn't have to testify. By entering a plea of not guilty, he's denied all the charges. He's as much as told you I didn't do it." RT 751.

In rebuttal, the prosecutor argued that defense counsel had made several errors. First, although the defendant was "presumed innocent until evidence to the contrary is presented" the jury was not to assume that the government or the victim "has it wrong." RT 781. The prosecutor then made the argument that forms the basis for the Griffin error claim:

> [PROSECUTOR:] The second error is to assume that the defendant has in any way told you he didn't do it. He didn't testify in this case. There's no evidence he didn't do it.
>
> [DEFENSE ATTORNEY:] Objection. . . . Misstates the law and Griffin error.
>
> THE COURT: It is not Griffin error. The entry of the plea of not guilty is a denial of the truth of the charges, as I've indicated. [¶] You may continue, Mr. Dolge.
>
> [THE PROSECUTOR:] She would have you speculate, but of course, there's many reasons why a defendant might go to trial. He says I can't prove it. Or he says I'm not going out like that. Whatever the reason, a defendant takes it to trial. In this case you have no evidence that he didn't do it. All the evidence is that he did do it.

RT 782. These statements were but a small part of the prosecutor's rebuttal that consumed ten pages of transcript. See RT 781-791.

4

The California Court of Appeal rejected petitioner's Griffin error claim.

> The prosecutor engaged in no misconduct here by remarking that no evidence had been presented that tended to exculpate defendant. Defendant presented no witnesses on his behalf. His defense relied on impeaching [the victim] Lowery's testimony. Defense counsel argued in closing, "this whole case is about the uncorroborated eyewitness testimony of one unreliable man who didn't report it until three days later." The prosecutor's remarks were made in response to the defense argument that entering a plea of not guilty was "as good as saying I didn't do it." "We apply a 'reasonable likelihood' standard for reviewing prosecutorial remarks, inquiring whether there is a reasonable likelihood that the jurors misconstrued or misapplied the words in question." (People v. Roybal (1998) 19 Cal.4th 481, 514.) In this case, the prosecutor said nothing more touching upon defendant's failure to testify than what is quoted above. There was no insinuation that the jury should draw adverse inferences from defendant's failure to testify. The prosecutor merely made the legitimate point that defendant's plea was not evidence and that there was no evidence he had not committed the robbery. There was no reasonable likelihood that the jurors misconstrued the prosecutor's remarks as an improper comment on Griffin's failure to testify.

Cal. Ct. App. Opinion, pp. 4-5.

The Fifth Amendment provides that "No person shall be . . . compelled in any criminal case to be a witness against himself." The defendant may not to be penalized for exercising this privilege. The Fifth Amendment self-incrimination privilege, as incorporated by the Fourteenth Amendment, "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." Griffin, 380 U.S. at 615. Griffin did not preclude all mention of a defendant's decision not to testify. It was not merely the fact of comment but the adverse nature of the comment on the defendant's decision not to testify that concerned the Griffin Court. See Lakeside v. Oregon, 435 U.S. 333, 338 (1978). In Lakeside, the Court found no constitutional error in a cautionary instruction, given over defendant's objection, that no adverse inference could be drawn from defendant's decision not to testify. Id. The Court rejected the argument that the neutral instruction waived a red flag for the jury about the defendant's non-testimony, and refused to indulge in "two very doubtful assumptions," including the assumption "that the jurors have not noticed that the defendant did not testify and will not, therefore, draw adverse inferences on their own." See id. at 339-40.

Griffin does not preclude comment on evidence other than the defendant's choice not to testify. Because the self-incrimination privilege is personal to the defendant, the privilege

5

does not provide protection for the defendant failing to put on evidence other than his own testimony. The test to determine whether a Griffin violation has occurred is "whether the language used was manifestly intended or was of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify. . . .There is a distinction between a comment on the defense's failure to present exculpatory evidence as opposed to a comment on the defendant's failure to testify." United States v. Mende, 43 F.3d 1298, 1301 (9th Cir. 1995) (internal quotation marks and citations omitted). Griffin also does not preclude a prosecutor from "fairly responding to an argument of the defendant by adverting to that silence." See United States v. Robinson, 485 U.S. 25, 34 (1988).

There was no Griffin error here. The prosecutor's comments did not request or suggest that any adverse inference be drawn from petitioner's decision not to testify. Although the prosecutor mentioned that petitioner had not testified, defense counsel already had drawn attention to that same fact in urging that defendant "doesn't have to testify." See RT 751. The prosecutor did not alert the jury to anything that the jury probably hadn't already noticed, i.e., that petitioner had not testified. See Lakeside, 435 U.S. at 340; see also Carter v. Kentucky, 450 U.S. 288, 301 n.18 (1981) ("It has been almost universally thought that juries notice a defendant's failure to testify.") The prosecutor's comments had no likelihood of causing the jury to penalize petitioner for exercising his constitutional privilege not to testify, which is just the vice sought to be avoided by Griffin. See Carter, 450 U.S. at 301; Portuondo v. Agard, 529 U.S. 61, 67 (2000) ("What we prohibited the prosecutor from urging the jury to do in Griffin was something the jury is not permitted to do."). The prosecutor correctly stated that the not-guilty plea was not evidence and that there could be several reasons for a defendant to go to trial, but that comment also did not call for the jury to draw any adverse inference from the non-testimony. Further, the prosecutor's comment that petitioner did not testify was a fair response to defense counsel's closing argument that incorrectly stated that the not-guilty plea was the functional equivalent of defendant saying, "I didn't do it."

The prosecutor argued that there was no evidence contradicting the victim's testimony. That argument did not call attention to petitioner's failure to testify as the prosecutor argued the absence of contradicting evidence in general and not specifically from petitioner. The absent evidence was not of the sort that only could be provided by petitioner's testimony and the prosecutor's argument was permissible comment about the defense's failure to present exculpatory evidence. Cf. Mende, 43 F.3d at 1301 (commenting on defendant's failure to present exculpatory evidence is not the same as commenting on defendant's failure to testify).

Additionally, the jury instructions correctly stated the law concerning a defendant's decision not to testify and correctly put the burden of proof on the prosecution. CT 102 (CALJIC 2.60 and 2.61). CALJIC 2.60 specifically instructed the jury that the defendant had the constitutional right not to be compelled to testify and that jurors "must not draw any inference from the fact that a defendant does not testify." Id.

The state court of appeal inquired whether there was a reasonable likelihood that the jury misconstrued or misapplied the prosecutor's comments, but that inquiry did not lower the Griffin standard to the detriment of petitioner. The state appellate court considered not only whether there was an impermissible statement but also whether the jury may have misconstrued or misapplied what the prosecutor actually had stated. This was not contrary to or an unreasonable application of Griffin, just as the Ninth Circuit has not unreasonably interpreted Griffin by considering comment impermissible if it is manifestly intended to call attention to the defendant's failure to testify, or "is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify." See Mende, 43 F.3d at 1301. Both the quoted part of Ninth Circuit's standard and the California Court of Appeal's approach address the common situation where the prosecutor has not explicitly commanded the jury to infer guilt from defendant's silence but has made statements that raise a question of whether the prosecutor has tried to accomplish indirectly that which he cannot do directly. The state court of appeal correctly identified the Griffin rule and reasonably applied it. Furthermore, even if the state court of appeal had applied Griffin unreasonably,

7

petitioner could only obtain relief is there actually was a Griffin error – i.e., that he is in custody in violation of the U.S. Constitution – and this court has determined that there was not a Griffin error. Petitioner is not entitled to the writ on this claim.

       2.      Insufficiency of Evidence Claim

           a.      Background

Petitioner's second claim concerns sentence enhancements for three prior prison terms, which he urges were not proven by sufficient evidence. His total sentence was six years: three years for the robbery plus consecutive one-year enhancements for three prior prison terms he had served. He does not dispute that he had three prior prison terms, but instead claims that none of his prison terms could be counted because the prosecutor failed to prove that they were not subject to the 5-year wash-out period in the statute.

California Penal Code § 667.5(b) provides: "[Where] the new offense is any felony for which a prison sentence is imposed, in addition and consecutive to any other prison terms therefor, the court shall impose a one-year term for each prior separate prison term served for any felony; provided that no additional term shall be imposed under this subdivision for any prison term served prior to a period of five years in which the defendant remained free of both prison custody and the commission of an offense which results in a felony conviction." The phrase beginning with "provided that." describes the wash-out period, which as relevant here would allow petitioner to avoid the enhancements if he had stayed felony free for five years after his December 12, 1996 discharge from CDC custody or for five years before the March 24, 2003 commission of the robbery charged in this case. Under state law, the prosecutor had the burden of proving that the wash-out period did not apply. See Cal. Ct. App. Opinion, p. 5.

Here, petitioner had prior prison terms for felony convictions in 1988, 1990 and 1993. He also had suffered felony convictions in 1998 and 1999. The critical question was whether petitioner committed the crimes that led to the 1998 and 1999 convictions within five years of having been discharged from CDC custody on December 12, 1996 or within five years before the current robbery. If the felonious behavior did not occur in one of these five-year

8

1 time periods, the wash-out rule would apply and petitioner would not be subject to the
2 sentence enhancements.

3 The sentence enhancements were decided at a court trial after petitioner had waived
4 his jury trial rights on the enhancements. The court held the trial, found the enhancement
5 allegations true, and sentenced petitioner that same day. The proof on the prior prison term
6 allegations consisted a prison packet for petitioner and a fingerprint expert who connected
7 petitioner to the prison packet by testifying that petitioner's fingerprints matched those in the
8 prison packet. The main evidence was the prison packet, which neither party has provided to
9 this court. There is no dispute that the prison packet showed that petitioner was released
10 from CDC custody on December 12, 1996; that he had suffered a felony conviction on
11 September 4, 1998 for the felony of theft with a prior theft conviction; and that he had
12 suffered a felony conviction in 1999 for possession of narcotics. The prison packet did not,
13 however, explicitly state the date on which petitioner committed the theft that led to the 1998
14 theft conviction and did not explicitly state when he engaged in the criminal activity that led
15 to the 1999 drug conviction.

16 Petitioner urged on appeal and here that, because the prison packet did not explicitly
17 state the dates on which he committed his crimes that led to the 1999 drug conviction and the
18 1998 theft conviction, there was insufficient evidence to support the decision that the old
19 felonies had not been washed out under California Penal Code § 667.5(b)'s wash-out rule.

20       b.      <u>State Court Analysis</u>

21 The state court of appeal applied a procedural bar to reject the claim. The court noted
22 that the prosecutor bore the burden of proof under state law: "'for the prosecution to prevent
23 application of the 'washout' rule, it must show a defendant <u>either</u> served time in prison <u>or</u>
24 committed a crime leading to a felony conviction within the pertinent five year period.'" Cal.
25 Ct. App. Opinion, p. 5 (citation omitted). The court found that the insufficient evidence
26 claim was procedurally barred, however. The claim was waived by defendant's failure to
27 contemporaneously object. Indeed, petitioner's counsel explicitly conceded that the wash-
28 out period did not apply when he argued for the court to strike the priors. <u>See</u> Cal. Ct. App.

9

Opinion, p. 7; CT 159.  The state appellate court further found that there was no prejudice from the failure to object:

> Moreover, defendant does not assert that he was prejudiced by his failure to object or suggest that the prosecution could not have met its burden of proving the inapplicability of the washout period.  On the face of the record it is highly improbable that the exception applied.  Any offense committed after March 24, 1998, would make the washout rule inapplicable.  The probation report reflects that Griffin was arrested for felony offenses (for which he was later convicted) on July 20, 1998, and August 7, 1999.  Unless both of those offenses were committed after he was released from custody on December 12, 1996, and before March 24, 1998, the washout rule would not apply.  Since the washout rule is entirely statutory, we apply the standard articulated in People v. Watson (1956) 46 Cal.2d 818, 836, and see no reasonable probability that a result more favorable to defendant would have resulted if the dates of the prior offenses were reflected in the record.

Cal. Ct. App. Opinion, p. 8, as amended by May 5, 2005 Order Modifying Opinion and Denying Rehearing.

        c.      <u>The Claim Is Procedurally Barred</u>

A federal court will not review questions of federal law decided by a state court if the decision rests on a state law ground that is independent of the federal question and adequate to support the judgment.  Coleman v. Thompson, 501 U.S. 722, 729 (1991).  The procedural default doctrine forecloses federal review of a state prisoner's federal habeas claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule.  See id. at 729-30.

The Ninth Circuit has recognized and applied the California contemporaneous objection rule in affirming denial of a federal petition on grounds of procedural default where there was a complete failure to object at trial.  See Vansickel v. White, 166 F.3d 953, 957-58 (9th Cir.), cert. denied, 528 U.S. 965 (1999); see e.g., Davis v. Woodford, 384 F.3d 628, 653-54 (9th Cir. 2004) (Confrontation Clause claim procedurally barred where state supreme court found constitutional claim waived because petitioner failed to raise it below); Paulino v. Castro, 371 F.3d 1083, 1092-93 (9th Cir. 2004) (barring review of jury instruction error claim because no contemporaneous objection); Vansickel, 166 F.3d at 957-58 (barring review of challenge to denial of peremptory challenges because no contemporaneous objection).

1   The state appellate court refused to consider the merits of petitioner's claim and
2   determined that it was procedurally barred because defense counsel failed to object to the
3   alleged error at a time when the trial court could have addressed the problem and fixed it.
4   "The matter could have been addressed and the factual predicate for the sentences clarified
5   had defendant brought the question to the attention of the trial court." Cal. Ct. App. Opinion,
6   p. 8. For example, if defense counsel had objected to the trial court's finding by way of a
7   motion for an acquittal or dismissal for failure to prove the date of the 1998 and 1999
8   felonious acts, the court could have reopened the matter and allowed the prosecution to
9   attempt to prove the dates. Defense counsel's failure to object – indeed, his argument that
10  the washout did not apply – precluded the trial court from taking quick and simple remedial
11  steps to address the problem. Although defense counsel's concession that the wash-out rule
12  did not apply was made at sentencing, the sentencing occurred just minutes after the court
13  found the prior prison term allegations true. See CT 158-159. Double jeopardy concerns
14  would not have been present because the evidentiary insufficiency related to the sentencing
15  enhancement rather than the guilt of the offense. See Monge v. California, 524 U.S. 721,
16  727, 728 (1998); cf. People v. Fielder, 114 Cal. App. 4th 1221, 1234 (Cal. Ct. App. 2004)
17  (retrial on applicability of washout period not precluded by state or federal double jeopardy
18  prohibitions); id. (remanding for retrial to permit prosecution to produce adequate evidence
19  to support application of § 667.5(b)). Petitioner argues that the state court erred in applying
20  the contemporaneous objection rule, but this court does not inquire into the correctness of the
21  state court's application of a state procedural rule. See Poland v. Stewart, 169 F.3d 573, 584
22  (9th Cir. 1998), cert. denied, 528 U.S. 845 (1999).

23  A procedural default will be excused if the petitioner can demonstrate cause for the
24  default and actual prejudice as a result of the alleged violation of federal law or demonstrate
25  that failure to consider the claim will result in a fundamental miscarriage of justice. No such
26  demonstration was made here. The state court of appeal determined that petitioner had failed
27  to show prejudice from the failure to object, and noted that it was highly improbable that the
28  wash-out rule applied. In light of that determination, petitioner's complete failure to attempt

11

to develop a record of prejudice is quite striking. Petitioner did not present to this court – nor, apparently, to any state court -- any evidence of the dates on which he engaged in the felonies that led to the 1998 and 1999 convictions, such as the arrest reports or even a declaration from himself stating when he had engaged in the drug possession and theft. He has not shown prejudice as a result of the alleged violation of his constitutional right or a fundamental miscarriage of justice to avoid the procedural default.

This court therefore will honor the state's procedural bar and not reach the merits of petitioner's claim.

B.  Petitioner's Request For Appointment of Counsel

Petitioner's request for appointment of counsel is DENIED. (Docket #4.) A district court may appoint counsel to represent a habeas petitioner whenever "the court determines that the interests of justice so require and such person is financially unable to obtain representation." 18 U.S.C. § 3006A(a)(2)(B). The decision to appoint counsel is within the discretion of the district court. See Chaney v. Lewis, 801 F.2d 1191, 1196 (9th Cir. 1986), cert. denied, 481 U.S. 1023 (1987). Appointment is mandatory only when the circumstances of a particular case indicate that appointed counsel is necessary to prevent due process violations. See id. The interests of justice do not require appointment of counsel in this action. The petition presents purely legal claims with no need for factual development. The claims also were fully briefed in state court by counsel representing petitioner at the time.

## CONCLUSION

The petition for writ of habeas corpus is DENIED. The clerk shall close the file.

IT IS SO ORDERED.

DATED:  January 11, 2007

_____
Marilyn Hall Patel
United States District Judge